[Civ. No. 54387. First Dist., Div. Three. Apr. 11, 1984.]

STEVEN COCHRAN et al., Plaintiffs and Appellants, v.
HERZOG ENGRAVING COMPANY,
Defendant, Cross-complainant and Appellant;
CITY OF SAN MATEO, Defendant, Cross-defendant and Respondent.

COUNSEL

Abramson & Bianco, Abramson & Smith, William B. Smith, Albert R. Abramson and Daniel U. Smith for Plaintiffs and Appellants.

Hoge, Fenton, Jones & Appel, Robert M. Tobin and H. R. Lloyd, Jr., for Defendant, Cross-complainant and Appellant.

Douglas Dang, City Attorney, and Peter W. Olson, Assistant City Attorney, for Defendant, Cross-defendant and Respondent.

## OPINION

**SCOTT, J.**—This appeal from summary judgment presents the question of the scope of the immunities afforded municipalities and their fire departments by the provisions of the California Tort Claims Act. Appellants argue that the City of San Mateo (City) violated several mandatory duties under its municipal code aimed at abating known hazardous conditions, and that no statutory immunities protect the City from liability under the facts of this case. We find that the City is immune from liability, and affirm the judgment.

The pleadings, declarations, and discovery in the record and before the trial court on the City's motion for summary judgment present the following evidence. Bonnie L. Cochran was working at the Herzog Engraving Company in San Mateo on July 6, 1978, when a fire broke out, resulting in her death. Magnesium, a highly combustible substance, was in use on the Herzog premises at the time of the fire. In February 1975, several years prior to the fatal fire, a representative of Herzog had contacted the San Mateo Fire Department and spoken to Fire Marshal Thomas K. Slattery about Herzog's plans to move into a new location. According to notes made by Slattery of the meeting, the Herzog representative informed Slattery that some of the work Herzog did involved the processing of magnesium. Slattery's notes do not refer to any recommendations he may have made to the Herzog representative regarding the magnesium, although his usual practice was to record such recommendations in writing. Slattery had no independent recollection of what was discussed in the meeting.

After the meeting between the Herzog representative and the fire marshal, there were at least two inspections of Herzog's premises by the fire department. A "pre-firefighting inspection report," dated May 16, 1977, notes the presence of magnesium under an item titled "Storage of Hazardous Material." A subsequent inspection report dated April 12, 1978, does not note the presence of magnesium or any other hazards, and cites only the need for "cleanup in general."

James D. Estorga was a hoseman/engineer at the San Mateo City Fire Department who had been an inspector with the Bureau of Fire Prevention

for the area in which Herzog was located; he was also one of the authors of the fire department's inspection program. He testified in deposition that prior to the fire he was unaware that magnesium was being stored at the Herzog premises; that had he become aware of that fact prior to the fire, he would have issued a corrective order under the City's fire prevention code; that he understood his duties to include the specification of suitable fire detecting and extinguishing devices where there was a need; that under certain circumstances, a permit is required for the processing of magnesium; and that the kind of fire extinguishing material he would have recommended to Herzog, had he known about the presence of magnesium prior to the fire, was "Class D" fire extinguishing powder.

The decedent's husband and parents (Cochran) brought suit against Herzog and the City for damages based on negligence. Herzog cross-complained against the City. The trial court granted the City's motions for summary judgment against both Cochran and Herzog on the grounds that the City was immune from suit under Government Code sections 818.6, 850, 850.2 and 850.4. Herzog and Cochran have appealed.

█ We begin our analysis with the recognition that under the statutory scheme in California, all government tort liability must be based on statute. (*Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648, 653 [161 Cal.Rptr. 140].) Government Code section 815,[1] enacted in 1963, abolished all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the federal or state Constitution. Thus, in the absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable. Moreover, under subdivision (b) of section 815, the immunity provisions of the California Tort Claims Act will generally prevail over any liabilities established by statute. (Gov. Code, § 815; legis. committee com. to Gov. Code, § 815, 32 West's Ann. Gov. Code (1980 ed.) pp. 168-169; *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125]; *Roseville Community Hosp.* v. *State of California* (1977) 74 Cal.App.3d 583, 586-587 [141 Cal.Rptr. 593].) In short, sovereign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute.

█ Cochran contends on appeal that the City was under a mandatory duty to inspect the Herzog premises with due care, and "to specify and

---

[1]Section 815 provides: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [¶] (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

require safeguards, proper and effective fire suppression materials and safe means of escape from said building in case of fire." Cochran's complaint alleged that the City's careless and negligent failure to perform these duties was the proximate cause of Bonnie Cochran's death. ■■ ■ ■ Herzog similarly argues that the City was under a mandatory duty to make appropriate recommendations to Herzog for eliminating or reducing fire hazards, and that the City gave negligent advice and approval to the fire suppression equipment used by Herzog at the time of the fatal fire.[2] ■ In essence, appellants assert that respondent City was under various mandatory duties to inspect the Herzog premises, to correct or remedy any hazardous conditions liable to cause fire, and to require the use of adequate protective measures, including suitable fire detecting and extinguishing devices; and that the breach of these duties subjected it to liability.

Appellants cite Government Code section 815.6, which provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Respondent relies on four immunity statutes found at Government Code sections 818.6, 850, 850.2 and 850.4, and argues that these provisions are aimed at protecting municipal fire departments and firefighters from civil liability.[3]

---

[2]Neither appellant's complaint actually alleges any duty on the part of the City, much less a mandatory statutory duty as required by Government Code section 815, nor do the complaints allege any facts in support of the purported duties alleged in the appellate briefs. To state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity. (*Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814, 819 [131 Cal.Rptr. 854].) The complaints were thus subject to demurrer for failure to state a claim on which relief may be granted. Rather than affirming on this ground, however, we depart from the general practice of not reviewing unnecessary matters because of the importance of the substantive questions raised in this case. (See, e.g., *City & Co. of S. F.* v. *County of San Mateo* (1950) 36 Cal.2d 196, 198 [222 P.2d 860]; *Heimberger* v. *City of Fairfield* (1975) 44 Cal.App.3d 711, 713 [117 Cal.Rptr. 482]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 225, pp. 4214-4215.)

[3]"A public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its property (as defined in subdivision (c) of Section 830), for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." (Gov. Code, § 818.6.) "Neither a public entity nor a public employee is liable for failure to establish a fire department or otherwise to provide fire protection service." (Gov. Code, § 850.) "Neither a public entity that has undertaken to provide fire protection service, nor an employee of such a public entity, is liable for any injury resulting from the failure to provide or maintain sufficient personnel, equipment or other fire protection facilities." (Gov. Code, § 850.2.) "Neither a public entity, nor a public employee acting in the scope of his employment, is liable for any injury resulting from the condition of fire protection or firefighting equipment or facilities or, except as provided in Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code, for any injury caused in fighting fires." (Gov. Code, § 850.4.)

Appellants argue that the facts of this case remove it from the purview of these broad immunity provisions. Government Code section 815.6, on which appellants rely, expressly applies only to "mandatory" duties of public entities. Thus, appellants' entire argument is contingent on the proposition that the alleged duties of the City are *mandatory,* and not discretionary, and furthermore that the City is not statutorily immune from liability.

In resisting the summary judgment motions below and in their briefs to this court, appellants cite various sections of the San Mateo Municipal Code providing for building inspections by the fire department and the abatement of dangerous or hazardous conditions. It is not at all clear to us that these provisions are actually "mandatory," as that term is used in section 815.6. Not every statute or municipal ordinance which uses the word "shall" is obligatory rather than permissive. ■ "Although statutory language is, of course, a most important guide in determining legislative intent, there are unquestionably instances in which other factors will indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion." (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 910-911, fn. 6 [136 Cal.Rptr. 251, 559 P.2d 606]; Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 2.43, pp. 96-98.)

■ We need not address this issue, however. Assuming without deciding that the duties alleged by appellants are "mandatory," we find that they still come within the scope of the applicable immunity provisions. Government Code section 818.6 grants absolute immunity from liability for any "negligent inspection" of private property to determine if such property constitutes a hazard to health or safety, whether or not the duty to inspect is construed as "mandatory" or "discretionary." (*Clayton* v. *City of Sunnyvale* (1976) 62 Cal.App.3d 666, 668-671 [133 Cal.Rptr. 306].)

Appellants would have us interpret the inspection immunity narrowly to include only the actual search for hazardous conditions itself. They urge that the statute does not protect a public entity once it obtains any knowledge of hazardous conditions; and that liability may attach for negligent breach of other purported duties, such as a duty to advise and recommend ways to deal with known fire hazards, or to require specific fire suppression devices. But the inspection immunity cannot be so arbitrarily restricted to the mere failure to detect hazards. Public safety inspection necessarily encompasses making an informed determination that given conditions are in fact hazardous or not in compliance with regulations, officially reporting these hazard-

ous conditions, and fully disclosing them to all interested parties. Appellants' narrow interpretation of the immunity statute would clearly place a premium on careless fire inspection, and encourage municipalities not to make any efforts to learn about possible fire hazards.

■ The purpose of Government Code section 818.6 is to protect public entities from liability not only for failures to detect technical safety code violations, but for any negligence directly connected to the inspection process itself. In order for the immunity to apply, the negligence in question must have been part and parcel of the inspection or have had a direct or proximate effect on it, either by impairing its value, frustrating its goals or purposes, affecting the results or findings made, or in some other way resulting in damage to the investigation itself. Conversely, the immunity does not protect public entities from liability for negligent acts or omissions that happen to occur while the inspection is taking place, but which do not affect the results or goals of the inspection itself. ■ As stated in the legislative committee comment to the statute: "The immunity provided by this section covers negligent failure to make an inspection and negligence in the inspection itself. For example, the section makes the public entity immune from liability if its employee negligently fails to detect a defect in a building being inspected; but the section does not provide immunity where a public employee inspecting a building under construction negligently causes a plank to fall on a workman." (Legis. committee com. (Senate) to Gov. Code, § 818.6, 32 West's Ann. Gov. Code (1980 ed.) p. 218.)

If the immunity were not applicable in situations such as that presented by the facts in this case, municipalities would be exposed to unwarranted and unsupportable risk of liability. (Van Alstyne, *supra*, § 2.45, at pp. 99-102.) As the legislative committee comment to section 818.6 points out: "Because of the extensive nature of the inspection activities of public entities, a public entity would be exposed to the risk of liability for virtually all property defects within its jurisdiction if this immunity were not granted." This legislative statement clearly underscores the important reasons of public policy which support the broad scope of this immunity. (*Clayton* v. *City of Sunnyvale, supra,* 62 Cal.App.3d at pp. 670-671.)

Aside from the immunity provided by Government Code section 818.6, the trial court cited and relied on three other immunity statutes: Government Code sections 850, 850.2 and 850.4. The language of these provisions is sweeping, and they have been broadly construed by the courts in this state to provide immunity under circumstances quite similar to those before us.

We find that these statutes are applicable here, and provide further immunity for the City in the instant case.

■ Government Code sections 850 and 850.2 protect public entities from liability by providing governmental immunity for an unreasonable failure to maintain sufficiently adequate fire-protection service, even when a public entity has undertaken to provide such service. (*Vedder* v. *County of Imperial* (1974) 36 Cal.App.3d 654, 657, 699 [111 Cal.Rptr. 728]; Cal. Law Revision Com. com. to Gov. Code, § 850, 32 West's Ann. Gov. Code (1980 ed.) p. 421; Van Alstyne, *supra*, § 4.29, at pp. 369-371.) Similarly, under Government Code section 850.4, public entities and their employees are immune from liability for injuries resulting from the *condition* of fire protection or fire fighting equipment or facilities. (*Razeto* v. *City of Oakland* (1979) 88 Cal.App.3d 349, 351-353 [151 Cal.Rptr. 791].) As noted by the Law Revision Commission, "Section 850.4 provides for *absolute immunity* from liability for injury caused in fighting fires (other than injuries resulting from operation of motor vehicles) *or from failure to properly maintain fire protection equipment* or facilities. There are adequate incentives to careful maintenance of fire equipment without imposing tort liability . . . ." (Cal. Law Revision Com. com. to Gov. Code, § 850, 32 West's Ann. Gov. Code (1980 ed.) p. 421, italics added.) "Section 850.4 thus provides for absolute immunity for any injury caused by fire-fighting personnel acting within the scope of their employment."(*Heimberger* v. *City of Fairfield* (1975) 44 Cal.App.3d 711, 715 [117 Cal.Rptr. 482].)

■ We hold, as did the unanimous Supreme Court in *Heieck and Moran* v. *City of Modesto* (1966) 64 Cal.2d 229 [29 Cal.Rptr. 377, 411 P.2d 105], that these statutes establish governmental immunity under the facts of this case. In that case, the municipality had been unable to extinguish a fire because a valve in the water main serving nearby fire hydrants had been closed during certain water main improvements, cutting off the water supply, and had negligently not been reopened by city employees. We conclude that "whether the alleged injury . . . be viewed as resulting from 'failure to provide or maintain sufficient . . . fire protection facilities' (§ 850.2), or from the . . . 'condition' of the [available fire extinguishing equipment] (§ 850.4) the conclusion is inescapable that the Legislature intended to establish immunity under the circumstances alleged" by appellants. (*Heieck and Moran* v. *City of Modesto, supra*, 64 Cal.2d at p. 233.)

The causes of action at issue here are for an "injury" as defined by Government Code section 810.8, and are therefore within the scope of the immunity provided by sections 818.6, 850.2, and 850.4.

Judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

Petitions for a rehearing were denied May 8, 1984, and the petitions of all appellants for a hearing by the Supreme Court were denied June 27, 1984. Bird, C. J., was of the opinion that the petitions should be granted.