[No. B173131. Second Dist., Div. Six. Feb. 2, 2005.]

STACY MARIE ASTENIUS, a Minor, etc., et al., Plaintiffs and Appellants,
v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

SAMANTHA BETH GEARY, a Minor, etc., et al., Plaintiffs and Appellants,
v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Hugh Duff Robertson, Vivian M. Lum and Allan A. Sigel for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, James Humes, Chief Assistant Attorney General, James M. Schiavenza, Assistant Attorney General, and Joel A. Davis, Deputy Attorney General, for Defendant and Respondent.

OPINION

**GILBERT, P. J.**—Plaintiffs are children of a woman who died in an accident on a trail within a recreational area owned and operated by the State of California. We conclude the state is immune from liability under Government Code section 831.4.[1] We affirm the judgment entered following the trial court's sustaining of the state's demurrer.

FACTS

Tammy Geary died from injuries received while driving an off-highway vehicle (OHV) in the Hungry Valley State Vehicular Recreation Area (Hungry Valley). Hungry Valley is owned and operated by the California Department of Parks and Recreation. Guardians ad litem for two sets of Geary's children by prior marriages filed separate wrongful death suits against the state. The substantive allegations of the complaints are identical. The actions were consolidated.

The complaints allege as follows:

Prior to 1980, Hungry Valley was unimproved and not regulated or maintained by the state. Nevertheless, it was well known and widely used for OHV recreation. Beginning in the early 1980's, the state developed Hungry Valley by planning, grading, mapping, marking, inspecting and rating trails. The state also developed campgrounds, a ranger station and visitor's center. The state charged an entrance fee and provided a guide book showing trails and areas of Hungry Valley. The guide book contained a trail rating system. The book stated the trail ratings are intended to make trail use easier and safer. The book also stated that some areas contain hazards, such as erosion gullies, ditches and drop-offs, but that the hazards have been marked.

On July 13, 2002, Geary drove her OHV to Hungry Valley, paid the entrance fee and was given a guide book. She was an experienced driver who had participated in competitions. She was riding on the top of an area known as Rattler Hill. At the bottom of the hill are two major trails. Geary decided to descend the hill on a trail that "appeared to be well used" and was located within a mile of a campground. Before descending the trail Geary stopped, evaluated the trail and looked for barriers and warning signs. There were no indications that the trail was hazardous.

Geary cautiously started down the trail. Having started down, it was impossible to go back. The alignment of the trail required Geary to maintain

---

[1] All statutory references are to the Government Code unless otherwise stated.

her OHV off balance to the right or left. The grade of the trail was extremely steep. The tread surface of the trail was extremely rough and in poor condition with deep gullies, not visible from the start of the trail. In addition, along the trail were protruding rocks. During Geary's descent, she lost control. Her OHV overturned and slid down the trail, eventually coming to rest at the bottom. Geary suffered severe injuries and died later that day.

The state uses a publication known as the Wernex Manual to plan, mark, maintain and assess the level of difficulty on trails and areas of Hungry Valley. Factors of alignment, grade, tread surface and obstacles determine the level of difficulty. The trail Geary used contains the extreme of each factor. No OHV user would expect to encounter the extreme of each factor combined into one trail. Such a trail would be impossible for anyone to negotiate.

The state knew the trail was located in a high traffic area and was dangerous. There had been eight prior reported accidents on the trail caused by its dangerous condition. The state awarded a contract to place a fence around the area to prevent people from using the trail. The state failed to warn OHV users of the dangerous condition.

The trial court sustained the state's demurrer on the grounds that the state had immunity under sections 831.4 and 831.7.

## DISCUSSION

### I

The function of a demurrer is to test the sufficiency of a pleading by raising questions of law. (*Postley v. Harvey* (1984) 153 Cal.App.3d 280, 286 [200 Cal.Rptr. 354].) In assessing the sufficiency of a demurrer, all facts pleaded in the complaint must be deemed true. (*Holland v. Thacher* (1988) 199 Cal.App.3d 924, 928 [245 Cal.Rptr. 247].) But we do not assume the truth of contentions, deductions, or conclusions of fact or law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) If, upon consideration of all the facts stated, it appears that the plaintiff is entitled to any relief, the complaint will be held good. (*Chase Chemical Co. v. Hartford Accident & Indemnity Co.* (1984) 159 Cal.App.3d 229, 242 [205 Cal.Rptr. 469].)

### II

Section 831.4 provides in part: "A public entity, public employee, or a grantor of a public easement to a public entity for any of the following purposes, is not liable for an injury caused by a condition of: [¶] (a) Any

unpaved road which provides access to . . . riding, including . . . all types of vehicular riding . . . . [¶] (b) Any trail used for the above purposes."

Geary[2] argues section 831.4 applies only to unimproved land. In support of her argument, Geary cites a legislative committee comment to section 831.2. The comment states that sections 831.2 and 831.4 provide absolute immunity from liability for injuries resulting from the natural conditions of a state park area where the only improvements are recreational roads and trails. (See Legis. Com. com., reprinted at 32 West's Ann. Gov. Code (1995) foll. § 831.2, p. 328; *id.* Deering's Ann. Gov. Code (1982) foll. § 831.2, p. 251.)

Geary's reference to a legislative committee's comment is unconvincing. The best place to find legislative intent is in the language of the statute. When the Legislature has intended to limit governmental immunity to unimproved property, it has expressly said so. (See § 831.2 limiting immunity to injuries arising from "a natural condition of any unimproved public property".) Section 831.4 contains no such limiting language and we decline to add it.

Geary argues the state is not entitled to immunity under section 831.4 because it failed to warn of the dangerous condition. But nothing in section 831.4 makes immunity contingent on giving proper warnings. The immunity granted by section 831.4 is absolute. For the same reason, the fee charged by the state to enter the park did not abrogate the state's immunity. (See *Bartlett v. State of California* (1988) 199 Cal.App.3d 392, 398 [245 Cal.Rptr. 32].)

Nor does the state's duty under Public Resources Code sections 5090.32 and 5090.35 to maintain trails affect its immunity. Even assuming those sections create a mandatory duty, any breach of that duty comes within the scope of the immunity provisions of section 831.4. (See *Cochran v. Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 411 [205 Cal.Rptr. 1].)

Geary argues that although the second amended complaint refers to the accident site as a "trail," that was only for ease of reference. She claims that after she filed the second amended complaint, she learned that the accident occurred in an open riding area known as Rattler Hill. If given leave to amend, Geary would amend her complaint to refer to the accident site as Rattler Hill.

The state objects on the ground that Geary is attempting to change her theory on appeal. Our concern is not that she is attempting to change her

---

[2] For the purpose of convenience we refer to the plaintiffs collectively as Geary.

theory, but that she is attempting to plead around the facts. An amendment that contradicts an admission in the original pleadings will ordinarily not be allowed. (Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 1130, p. 585.)

The facts pleaded show that Geary did not simply ride at random down the hill. Instead, she chose a path that "appeared to be well used." The complaint describes how Geary had to balance her OHV on one side or another in order to follow the path. Section 831.4 does not define the term "trail." Thus we give it its usual and ordinary meaning. (*Estate of Griswold* (2001) 25 Cal.4th 904, 911 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) The facts alleged in the complaint show that Geary was on a "trail" within the usual and ordinary meaning of that term. That the trail may have been within an area designated for free riding is irrelevant.

Section 831.4 grants immunity to the state. We need not decide whether the state has immunity under section 831.7.

The judgment is affirmed. Costs are awarded to respondent.

Yegan, J., and Coffee, J., concurred.